Bert W. Heuvelman, doing business as Instrument Sales Company (not incorporated), Plaintiff-Appellant, v. Triplett Electrical Instrument Company, Defendant-Appellee.

Gen. No. 47,702.

First District, First Division.
October 26, 1959.
Rehearing denied November 18, 1959.
Released for publication November 18, 1959.

Maurice R. Kraines, of Chicago, for plaintiff-appellant.

Hoffman and Davis, of Chicago (Maurice L. Davis and David I. Hoffman, of counsel) for defendant-appellee.

JUSTICE SCHWARTZ delivered the opinion of the court.

The trial court sustained both defendant's motion for a summary judgment and its motion to strike the amended complaint, and thereupon dismissed the suit with prejudice. From these orders plaintiff has appealed. The principal issue involved turns on an alleged oral agreement for permanent employment.

The amended complaint consists of three counts. Count I seeks a declaratory judgment finding that plaintiff and defendant entered into a contract for the permanent employment of plaintiff as a sales representative for the sale of electrical and radio equipment; that the contract was breached; and that plaintiff suffered damages in the sum of $250,000. Counts II and III are alternatives to Count I. Count II alleges that plaintiff prior to his alleged discharge procured the listing of defendant's products in various catalogs and was entitled to commission on sales obtained through publication and distribution of such catalogs, amounting to a sum in excess of $75,000. Count III alleges that plaintiff although informed that his services were terminated as of November 30, 1955, was called upon for services until the appoint-

ment of a new representative in February, 1956; that in the interval he serviced the accounts and that his commissions on orders placed with defendant during that time amounted to in excess of $50,000.

The motion for summary judgment was supported by affidavits and depositions of the respective parties. In addition, defendant used the averments of the original complaint which had been sworn to by plaintiff. The amended complaint was not verified. The pertinent facts extracted from these documents follow. From 1925 to January, 1933, plaintiff was employed by an agency which served as defendant's sales representative in the midwest. In January, 1933, defendant hired plaintiff as its sole sales representative for the territory previously covered by the agency. The agreement specified no definite time of employment. In April, 1933, defendant desired to secure the services of another sales representative, Jerome T. Keeney, employed by a competitor of defendant, and defendant brought plaintiff and Keeney together for the purpose of having them become associated as joint representatives for the sale of defendant's products. At that meeting, as plaintiff alleges, defendant agreed that plaintiff's employment would continue as long as defendant manufactured and sold electrical equipment and as long as plaintiff acted as sales representative in that field. Plaintiff charges that it was on the basis of that agreement that he consented to enter into a partnership with Keeney. Instead of a partnership, however, a corporation was formed, the Instrument Sales Corporation, in which plaintiff and Keeney owned stock.

The business association between plaintiff and Keeney continued until 1940, when Keeney left plaintiff to join the Simpson Electric Company, a competitor of defendant. At that time Simpson also made plaintiff an offer. Plaintiff orally discussed with defend-

ant the matter of his leaving and, as stated by plaintiff but denied by defendant, Triplett, president of defendant company, told plaintiff as they walked down State Street in Chicago, that their arrangement was a permanent one. It continued until October, 1955, when defendant notified plaintiff that it terminated the relationship effective November 30, 1955.

■ We will first consider the motion for summary judgment as it applies to Count I. Oral contracts for "permanent employment" (meaning that as long as defendant was engaged in the prescribed work and as long as plaintiff was able to do his work satisfactorily, defendant would employ him) have been sustained, provided such contracts are supported by a consideration other than the obligation of services to be performed on the one hand and wages to be paid on the other. Molitor v. Chicago Title & Trust Co., 325 Ill. App. 124, 132–3, 59 N.E.2d 695–8 (1945); Carnig v. Carr, 167 Mass. 544, 46 N. E. 117 (1897); Riefkin v. E. I. DuPont De Nemours & Co., 290 Fed. 286 (1923); Eggers v. Armour & Co., 129 F.2d 729 (1942); Roxana Petroleum Co. v. Rice, 235 Pac. 502 (Okla.), (1924). In the Molitor case the consideration was the giving up by the employee of a profitable law practice in New York in order to move to Chicago in reliance on a promise of permanent employment. The Molitor case was supported and approved, but distinguished, in Goodman v. Motor Products Corp., 9 Ill.App.2d 57, 77, 132 N.E.2d 356, 366 (1950). In Carnig v. Carr, supra, the plaintiff gave up a going and competitive venture to go with his employer. In Riefkin v. E. I. DuPont De Nemours & Co., supra, the employee gave up his position in government, a position of security and prestige. The case of Roxana Petroleum Co. v. Rice, supra, concerned a firm's giving up its whole law practice in order to represent a single client. Where there is no particular detriment to the employee,

235

the act of terminating other employment is not a sufficient consideration to make the new contract binding. Edwards v. Kentucky Utilities Co., 286 Ky. 341, 150 S.W.2d 916 (1941).

In the instant case the time of the first alleged conversation on which permanent employment is based is April, 1933. At that time plaintiff was already employed by defendant and the formation of a partnership with Keeney, terminable at will, so far as appears from anything in the record, cannot be considered a detriment but an advantage, Keeney being a man of considerable experience and competence, as was plaintiff, in this business. The alleged renewal of the offer in 1940, when plaintiff was being solicited to join Simpson, is presented in such a vague, indefinite way that it is impossible to consider it as an obligation. Plaintiff says Simpson offered him a 25% interest in a new business venture. It does not appear whether this was a gift or a capital contribution. It is not sufficient consideration for a contract of permanent employment to forego another employment opportunity. Lewis v. Minnesota Mut. Life Ins. Co., 240 Iowa 1249, 37 N.W.2d 316 (1949); Skagerberg v. Blandin Paper Co., 197 Minn. 291, 266 N. W. 872 (1936).

■■ It is our further conclusion that considered in the light of the averments under oath in the complaint and not specifically retracted in the amended complaint, and further considering the deposition of plaintiff, no contract for permanent employment was made, nor was any adequate consideration to support one shown. Such contracts extending for a long duration and resting entirely on parol should have for their basis definite and certain mutual promises. The words and the manner of their utterance should not be of that informal character which expresses only long continuing good will and hopes for eternal association.

We will proceed now to a consideration of the second count, in which plaintiff alleges he was entitled to commission on those sales to distributors induced by the listing of defendant's products in distributors' catalogs. While the court sustained the motion for summary judgment as to that count also, defendant acknowledges that was wrong and that only the motion to strike should have been sustained. The allegations upon which plaintiff relies are that he brought about the listing of defendant's products in various distributors' catalogs; that upon publication of those catalogs and their distribution to customers of distributors, sales would inevitably follow as distributors' inventories would be depleted and they would be required to reorder from defendant. Consequently, plaintiff concludes that when he procured catalog listings, he was the efficient cause of subsequent sales. Defendant in reply states that it is the fact of the sale which fixes the right of a salesman to payment of commission. Therefore a salesman cannot claim commission for sales effected after his term of employment ends, even though he was the efficient cause of the sale subsequently made.

■■ Defendant's contention ignores a principle of law protecting salesmen in a position similar to plaintiff where the salesman is discharged prior to culmination of a sale but after he has done everything necessary to effect the sale. Thus, the general rule recognized in this and other jurisdictions is that an agent or salesman who is the procuring cause of a sale is entitled to commission notwithstanding the fact that the sale was consummated by the principal personally or through another agent. Atkinson v. New Britain Mach. Co., 154 F.2d 895 (7th Circ., 1946). See also Groome v. Freyn Engineering Co., 374 Ill. 113 (1940). Cf. Annot., 12 A.L.R.2d 1361, 1372 (1950). We

recognize that the usual case within this rule involves an agent who has had some kind of direct personal contact with a prospective customer, and that it is therefore distinguishable from the case at bar. However, each case must be taken in its particular setting. If, as plaintiff alleges, the sales were all but consummated when an article was listed in a distributor's catalog, plaintiff has brought himself within the scope of the general rule. It is our conclusion that the court erroneously sustained the motion to strike Count II.

■ As to the third count, defendant, as in the case of the second count, acknowledges that the order for summary judgment was improper. The only question therefore with respect to the third count is whether the motion to strike was properly allowed. That count is in the nature of a quantum meruit. It charges that defendant held out plaintiff as its representative after termination of his employment and that plaintiff serviced the accounts until a new representative was appointed. In its motion to strike defendant complains of the use of the phrase "servicing the accounts," that the term "servicing" remains nebulous and undefined. We hold that the term has a common meaning understood not only as a sales term, but by the public generally with relation to those services which a salesman of mechanical appliances is called upon to perform. If defendant desired further clarification, that could easily have been obtained by interrogatories or other liberal discovery procedure.

■■ Defendant charges a further ground for the motion to strike that plaintiff failed to annex to his complaint a copy of a circular which defendant sent to distributors after termination of plaintiff's employment. The provision in Section 36 of the Civil Practice Act [Ill Rev Stats 1957, c 110, § 36] requires the attachment only of those instruments upon which action is brought. It does not contemplate annexation of

238

every paper which may properly be offered in evidence. H. E. Mueller & Co. v. Kinkead, 113 Ill. App. 132, (1903).

The allegation that the complaint does not allege the defendant's knowledge of or consent to the services of plaintiff during the period is effectively rebutted by the alleged notice circularized to defendant's customers subsequent to termination of the prior agreement. The notice set forth the fact that plaintiff was still defendant's sales representative.

The order insofar as it sustains the motion to strike Count I and enters summary judgment thereon is affirmed. The order insofar as it sustains the motion to strike Counts II and III and enters summary judgment thereon is reversed and the cause is remanded with directions to vacate the summary judgment and overrule the motion to strike Counts II and III, and for such further proceedings as are not inconsistent with the views herein expressed.

Affirmed in part and reversed in part, and cause remanded for further proceedings.

DEMPSEY, P.J. and McCORMICK, J., concur.