GEORGE MARTIN, Plaintiff-Appellee, v. FEDERAL LIFE INSURANCE COMPANY (MUTUAL), Defendant-Appellant.

First District (5th Division)    No. 1—93—3589

Opinion filed December 9, 1994.

Max G. Brittain, Jr., Ralph A. Morris, and Mary G. Fitzpatrick, all of Brittain, Sledz, Morris & Slovak, of Chicago, for appellant.

Michael J. Leech and Nancy G. Lischer, both of Hinshaw & Culbertson, of Chicago, for appellee.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff George Martin brought this breach of contract action

against his former employer, defendant Federal Life Insurance Company (Federal). The jury returned a verdict in favor of plaintiff and awarded him damages in the amount of $260,000. Defendant appeals, seeking judgment *n.o.v.* We affirm.

Plaintiff began working for Federal in 1954 as personnel manager. Throughout the next 22 years, plaintiff received various promotions, including director of personnel and purchasing, assistant vice-president, second vice-president and senior officer. In 1976, Martin was promoted to vice-president, and in February of 1977, he was reelected as vice-president.

Plaintiff testified that in July 1967, he received an offer which included a salary increase, better benefits, and a better opportunity for advancement from Franklin Life Insurance Company, in Springfield, Illinois. Before accepting the offer, plaintiff met with Federal's then executive vice-president and general counsel, Anderson Williamson, at Williamson's home. Williamson died in June 1977. Therefore the trial court ruled that in accordance with the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)), plaintiff could not introduce evidence of what was said in his meeting with Williamson, and defendant could not infer what was not brought up at the meeting. Martin testified that after receiving the offer from Franklin Life, he also met with Anthony Ventura, a second vice-president and statistician with Federal at the time. The day after Martin's meeting with Williamson, and also after meeting with Ventura, plaintiff called Franklin Life and declined the job offer. Martin stated that his decision about whether to accept the position at Franklin Life was affected by what happened between the time he left Franklin Life in Springfield on Sunday and the time he turned down the offer several days later. There was no evidence to suggest anything else, other than Martin's meeting with Williamson, could have affected his decision to remain at Federal. Martin continued his employment at Federal until March of 1977. On March 22, 1977, Federal terminated plaintiff's employment without cause. Plaintiff was not accused of any wrongdoing, poor performance or incompetence.

Ventura testified that he had been asked by Williamson to try to convince Martin to stay with Federal. According to Ventura, Williamson told Ventura, "I can't make him any promises such as promotions or increases in salaries, but I can promise him a job." Ventura testified that Williamson said that Martin could "rest assured that he would have continual employment" and Martin "could have a job as long as he wanted." Ventura stated that Williamson "guaranteed" Martin's job. Ventura testified that he talked to Martin and relayed to Martin the promises made by Williamson. A day or so after Martin

declined the Franklin Life job offer, Martin, Ventura and Williamson and their wives all had dinner together to celebrate Martin's decision to stay with Federal. The testimony of other Federal employees revealed that the company's personnel practice was not to fire without good cause and that other employees had been promised lifetime employment.

Based on this evidence, the jury returned a verdict in favor of plaintiff and awarded him damages of $260,000. Defendant claims that plaintiff failed to prove one or more of the necessary elements of an oral contract for permanent employment and therefore judgment *n.o.v.* should be granted. Judgment notwithstanding the verdict may not be granted unless all of the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary judgment can stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

This is the third appeal in this case. In *Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998 (*Martin I*), the court reviewed the facts alleged in plaintiff's complaint, which essentially are the facts that were proved at trial, and reversed the trial court order dismissing plaintiff's complaint. The court in *Martin I* held that when an employee gives up another offer in exchange for and in reliance upon the employer's promise of permanent employment, that contract, if proved, is enforceable. The court explained that sufficient consideration existed because the employer agreed to relinquish his right to terminate plaintiff at will in exchange for the retention of a valued employee who was about to join a competing firm. If the parties bargained for and exchanged such promises, the consideration element would be satisfied. The court in *Martin I* determined that the allegations in plaintiff's complaint if proved would support a finding that an oral contract for permanent employment had been formed between Martin and Federal.

In *Martin v. Federal Life Insurance Co.* (1987), 164 Ill. App. 3d 820, 518 N.E.2d 306 (*Martin II*), the court reversed the summary judgment order that had been granted in defendant's favor. After *Martin I* was remanded for further proceedings, Federal asserted for the first time that plaintiff's alleged employment contract was void and unenforceable under a provision of the Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 857). The trial court agreed and granted Federal's motion for summary judgment. On appeal, the court in *Martin II* reversed the summary judgment order, stating that under the law of the case doctrine, Federal could not rely on the Insurance Code for the first time on remand to the trial court after the appellate court decided the law of the case. In this third appeal, Federal urges us to

determine as a matter of law that the evidence at trial failed to meet the requirements of an oral contract for permanent employment. To be valid, an oral contract for permanent employment needs to contain a clear and definite agreement and be supported by sufficient consideration. (*Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 529 N.E.2d 281.) Federal claims that the evidence adduced at trial as a matter of law did not show either a clear and definite offer or valid consideration.

■ The issues of whether Williamson's statements regarding permanent employment can constitute a clear and definite promise of permanent employment and whether refusing another offer of employment is sufficient consideration have already been determined as a matter of law in *Martin I.* Those pronouncements became the law of the case, and we are precluded from reconsidering the issues of law decided in *Martin I.* The law of the case doctrine provides that a question of law decided on a previous appeal is binding on the trial court on remand as well as the appellate court on a subsequent appeal. (*People v. Lyles* (1990), 208 Ill. App. 3d 370, 567 N.E.2d 396; *Gord Industrial Plastics, Inc. v. Aubrey Manufacturing, Inc.* (1984), 127 Ill. App. 3d 589, 469 N.E.2d 389.) There are two exceptions to the law of the case doctrine. The first exception is when a higher reviewing court, subsequent to the lower reviewing court's decision, makes a contrary ruling on the same issue. The second exception allows the reviewing court to depart from the doctrine of the law of the case if the court finds that its prior decision was palpably erroneous, but only when the court remanded the case for a new trial on all issues. (*Stallman v. Youngquist* (1987), 152 Ill. App. 3d 683, 504 N.E.2d 920.) The rationale is that the appellate court, on the second appeal, actually would be reaching a different decision based on a new and different trial. Neither of these exceptions is applicable here.

■ The supreme court has yet to determine the necessary requirements for the establishment of a permanent employment contract. Therefore, the first exception to the law of the case doctrine is inapplicable. Federal claims that the second exception applies because the decision in *Martin I* is palpably erroneous. We do not believe that *Martin I* was palpably erroneous either at the time it was decided or under the current state of the law.

At the time *Martin I* was decided, two cases, *Heuvelman v. Triplett Electrical Instrument Co.* (1959), 23 Ill. App. 2d 231, 161 N.E.2d 875, and *Molitor v. Chicago Title & Trust Co.* (1945), 325 Ill. App. 124, 59 N.E.2d 695, had previously addressed oral contracts of permanent employment. In *Heuvelman,* the plaintiff turned down an offer

from a competitor's firm based on his employer's statement that "their arrangement was a permanent one." The court found that foregoing another employment opportunity is insufficient consideration to support a promise of permanent employment. In *Molitor*, a contract for permanent employment was upheld where the defendant specifically requested plaintiff to give up his law practice in New York and move to Chicago in exchange for permanent employment with defendant. Significant in the *Molitor* court's determination that there was sufficient consideration was the fact that the plaintiff gave up alternative employment in *exchange for* a promise of permanent employment. In *Martin I*, the court determined that if plaintiff gave up alternative employment in exchange for Federal's promise of permanent employment, that would be sufficient consideration. Therefore, the decision in *Martin I* was not palpably erroneous when made since it was supported by *Molitor*, one of the two applicable decisions at the time.

Nor do we find the decision in *Martin I* to be palpably erroneous under the current state of the law. While the court in *Martin I* focused primarily on whether there was sufficient consideration, the court implicitly found that the alleged promises of permanent employment asserted in plaintiff's complaint, if proved, were clear and specific enough to lead Martin to believe that an offer for permanent employment had been made. We recognize that informal statements expressing good will and hope for eternal association are insufficient to support an oral contract for permanent employment. (*Kercher v. Forms Corp. of America, Inc.* (1994), 258 Ill. App. 3d 743, 630 N.E.2d 978.) The words here, however, were more than mere assurances, expressions of good will or statements of good intentions. Although the Dead-Man's Act barred Martin from testifying as to the promises of permanent employment allegedly made to him by Williamson, Ventura's testimony that he conveyed to Martin Williamson's messages that he was promised a job, would have continual employment and could have the job as long as he wanted was sufficiently clear and definite to support the jury's verdict.

Illinois cases decided since *Martin I* have followed *Heuvelman* rather than *Martin I* and held that foregoing a position is not adequate consideration, reasoning that the employee has suffered no detriment in passing up the potential job offer because the employee is merely choosing one position over another. (See *Kercher v. Forms Corp. of America, Inc.* (1994), 258 Ill. App. 3d 743, 630 N.E.2d 978; *Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 529 N.E.2d 281; *Ladesic v. Servomation Corp.* (1986), 140 Ill. App. 3d 489, 488 N.E.2d 1355.) Federal courts, construing Illinois law, are split on the

issue of whether to apply *Martin I* or *Heuvelman* in determining whether foregoing other employment is sufficient consideration. In *Tolmie v. United Parcel Service, Inc.* (7th Cir. 1991), 930 F.2d 579, the court questioned whether *Martin I* is still valid, but stated that even *Martin I* recognized that not every relinquishment of a job offer will be sufficient consideration for permanent employment because a person must necessarily give up a prior job in order to accept a new one. Likewise in *Smith v. Board of Education of Urbana School District No. 116* (7th Cir. 1983), 708 F.2d 258, the court stated that foregoing other employment is not sufficient consideration to support a contract of permanent employment since every person who accepts an offer of employment forgoes the possibility of work elsewhere. See *Farr v. Continental White Cap, Inc.* (N.D. Ill. 1991), 774 F. Supp. 522, 525 (court stated that *Martin I* is "out of step with similar cases that have been decided by Illinois appellate courts").

Other Federal decisions, however, have expressly approved of the reasoning in *Martin I*. In *Kula v. J.K. Schofield & Co.* (N.D. Ill. 1987), 668 F. Supp. 1126, 1131, the court stated that *Martin I's* view is more in line with the modern concepts of consideration and the Illinois Supreme Court would probably adopt *Martin I's* reasoning that if leaving a job was bargained for, this supports the assertion that the parties clearly intended a permanent employment agreement. Similarly, in *Lamaster v. Chicago & Northeast Illinois District Council of Carpenters Apprentice & Trainee Program* (N.D. Ill. 1991), 766 F. Supp. 1497, the court found that the *Martin I* approach is well supported in law and theory and consideration may be found where the employee relinquishes another job and where this is specifically bargained for.

The fact that some Federal courts have approved of the reasoning in *Martin I* reveals that the *Martin I* decision is not palpably erroneous. The Illinois cases disagreeing with *Martin I* all concerned whether the trial court properly granted either a motion to dismiss or a motion for summary judgment. In the instant case, the appellate court has already determined that plaintiff's claim withstands a motion to dismiss as well as a motion for summary judgment and that plaintiff's allegations if proved would support a claim for breach of a permanent contract. The decision in *Martin I*, which was reinforced in *Martin II*, is the law of the case and must be followed here. The jury weighed this evidence and found in favor of plaintiff. The earlier *Martin* decisions determined that plaintiff was entitled to a jury trial, and we cannot now say that the evidence presented, when viewed in the light most favorable to plaintiff, so overwhelmingly favored Federal that no contrary judgment can stand.

Defendant also claims that there was no evidence from which the jury could have concluded that Williamson had authority to offer Martin a contract of permanent employment. The issue of authority is generally a question of fact for the jury. (*Molitor v. Chicago Title & Trust Co.* (1945), 325 Ill. App. 124, 59 N.E.2d 695.) There was evidence that when Williamson made the offer of permanent employment, he was the president-elect. Although the testimony was conflicting, evidence was introduced that in February of 1967, Williamson had been designated as the new president. The jury resolved the conflict and could have concluded that this status gave Williamson authority to make the permanent employment offer. In the alternative, there was sufficient evidence for the jury to have concluded that even if Williamson lacked authority at the time he made the agreement with Martin, he acquired that authority in 1967 when he did become president and he never repudiated his promise to Martin. When a party accepts the benefits of an agreement with knowledge of the agreement, it ratified the agent's actions. (*Buford v. Chief, Park District Police* (1960), 18 Ill. 2d 265, 164 N.E.2d 57.) Therefore, we cannot say that the evidence so overwhelmingly favors Federal that no contrary verdict can stand.

Accordingly, for the reasons set forth above, we affirm the judgment of the trial court.

Affirmed.

COUSINS, P.J., and GORDON, J., concur.