Nova WHITE, Plaintiff,

v.

PACIFIC MEDIA GROUP, INC. and Gannett Communications, Inc., Joe Crimes, General Manager of Pacific Media Publications, Defendants.

No. CV03–00587DAEKSC.

United States District Court,
D. Hawai'i.

June 16, 2004.

Andre S. Wooten, Honolulu, HI, for Nova White, plaintiff.

Daniel G. Mueller, Torkildson Katz Fonseca Moore & Hetherington, Honolulu, HI, for Pacific Media Group, Inc., Gannet Communications, Inc., Joe Grimes, General Manager of Pacific Media Publications, defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OR ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT

EZRA, Chief Judge.

The court heard Defendants' Motion on May 3, 2004. Andre S. Wooten, Esq., appeared at the hearing on behalf of Plaintiff; Daniel G. Mueller, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Defendants' Motion for Partial Dismissal or Alternatively, for Partial Summary Judgment.

### BACKGROUND

Plaintiff Nova White ("Plaintiff") worked for a company owned by Denis Guttmiller ("Guttmiller") called "Buy and Sell" as an Ad Sales Manager. Plaintiff claims that Guttmiller gave her "hire and fire authority" as a manager with the company because Guttmiller was often working outside of Honolulu "running papers" several days a week. When he was out of the office, Plaintiff maintains that she was responsible for ensuring that the paper got out on time, that the money was collected, and that the ads were published.

Plaintiff alleges that at some point during her decade long employment with the company, she decide to leave and join the sales department at GET. Plaintiff alleges that Guttmiller called her and hired her back with a promise of a sales manager/publisher assistant position. Guttmiller then allegedly made Plaintiff the manager of "Happy Adds", a new company, and then later promoted her to display manager of Buy and Sell at a salary of $3,000 a month plus 10% commission and bonuses.

Defendant Gannett Pacific Corporation ("Defendant Gannett")[1] purchased the publication Buy and Sell, along with two other local advertising tabloids. Defendant Gannet subsequently merged the three publications into a new company called Pacific Media Group, Inc. ("Defendant Pacific Media"). Plaintiff maintains that Guttmiller sent an email to Plaintiff's new boss, Defendant Joe Grimes ("Defendant Grimes") regarding Plaintiff's authority to run the paper when Guttmiller was off the island. Plaintiff also alleges that Guttmiller's promise to Plaintiff of a sales manager/publisher assistant position was communicated to Defendant Grimes.

At the time of the sale, Plaintiff alleges that Defendants announced to all staff that their salaries were to remain the same. Upon her return from vacation in January of 2002, Plaintiff was informed that her salary would be reduced to $800 a month

---

1. Although Plaintiff consistently refers to Defendant Gannett as Gannet Communications, Plaintiff is misinformed as the entity's correct name is Gannett Pacific Corporation.

plus 10% commission. Plaintiff alleges that she was the only management level employee that was demoted, despite the fact that she had previously managed the largest sales staff out of all of the three merged publications. She also contends that all other sales people made 15% commission. She states that despite her experience with the company, a white male, who had less experience and productivity at the job, was awarded the position of sales manager. Plaintiff states that not only was she reduced to a salesperson, but she was not even considered for Sales Manager on two separate occasions.

Defendant Grimes served as Plaintiff's supervisor, and is, according to Plaintiff, the principal sales manager responsible for reducing Plaintiff's salary in a discriminatory manner. Plaintiff alleges that Defendant Grimes asked Guttmiller to tell Plaintiff about her demotion and then subsequently asked him, "did she quit yet" in a voice loud enough for Plaintiff to overhear. Defendant Grimes allegedly placed his wife into the management position formerly held by Plaintiff at a salary of $3,000 a month. Plaintiff next states she was the only African–American female at the company, and despite good letters of recommendation, including one from the previous owner, she was frozen out of being considered for the new combined sales manager position.

Plaintiff filed a complaint with the Hawaii Civil Rights Commission ("HCRC") on October 7, 2002 for discrimination on the basis of race and age that occurred beginning on January 25, 2002 and continued as late as March 16, 2002. On October 7, 2002, Plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") for age and race discrimination which allegedly occurred on the same dates.

Plaintiff claims that immediately after she refused to accept insufficient compensation to settle her complaint at an EEOC mediation session, Defendant Grimes retaliated against her by raising her sales quota more than any other sales person. Plaintiff contends that Defendant Grimes stated that it was fair to do so since Plaintiff had in the past sold more new ads than any other person. Defendant Grimes then allegedly threatened to discipline or fire Plaintiff if she failed to increase her sales by 25%. Plaintiff states that Defendant Gannett Communications ultimately fired Defendant Grimes.

Plaintiff again filed a charge of discrimination with the EEOC and the HCRC on July 14, 2002, this time alleging sex discrimination and retaliation. Plaintiff has not specified what the EEOC or HCRC ultimately held with respect to her claims, or whether they issued her a right to sue letter.

Defendants filed its Motion for Partial Dismissal Or, Alternatively, for Partial Summary Judgment ("Defendants' Motion") on February 10, 2004. Plaintiff filed is Memorandum in Opposition to Defendants' Motion to Dismiss Or, Alternatively, for Partial Summary Judgment (Plaintiff's Opposition") on April 15, 2004. Defendants filed its Reply on April 22, 2004.

## STANDARD OF REVIEW

■ Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A court will dismiss a case for failure to state a claim if it is clear from the plaintiff's complaint that he cannot prove any set of facts in support of the claim that would entitle him to relief. *Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 723–24 (9th Cir.2000). Dismissal for failure to state a claim is a ruling on a question of law. *Parks Sch. of*

*Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).

■ Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994), including any attached exhibits, *Symington,* 51 F.3d at 1484. To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990).

Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Id.* From the facts alleged, the court must draw all reasonable inferences in favor of the nonmoving party. *Usher,* 828 F.2d at 561. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988). A court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg,* 18 F.3d at 754–55.

Since the court will be relying on information outside the pleadings, Defendants' Motion will be one for Partial Summary Judgment. As set forth in Federal Rule of Civil Procedure 56(c), summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party

is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c) (2003).

In its motion for summary judgment, the moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact and that the court may rule on the issues as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Despite this burden, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the ultimate burden of proof at trial. *See id.* at 323, 106 S.Ct. 2548.

Once the movant has met its initial burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. *See* Fed. R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). Moreover, there is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *See id.* The evidence

submitted by the nonmovant in opposition to a motion for summary judgment "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *See id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Although highly fact-based cases are not generally suitable for summary judgment, the nonmoving party must demonstrate that sufficient evidence of a factual dispute exists to require a jury or judge to resolve the parties' differing versions of the truth at trial. In ruling on such a motion, this court may not make credibility determinations or weigh conflicting evidence. *See Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990).

## DISCUSSION

A. *Count I: Breach of Contract, Promissory Estoppel*

Plaintiff alleges that Defendants breached two separate contracts with her.[2] First, Plaintiff alleges that in allegedly demoting her, they breached her contract with Guttmiller, which contract was apparently communicated to Defendants. Plaintiff also states that Defendants breached their contract, formed when they announced to the employees that their salaries would not be changed after the sale

and merger of Buy and Sell, when Plaintiff's salary was reduced.

Plaintiff cannot establish, even assuming that all of the facts as alleged are true, that Guttmiller's promise is binding on Defendant. Guttmiller made the alleged promise approximately three years before Defendants purchased the company, and Defendants were not a party to the contract. Even assuming Plaintiff's allegation that Defendants knew of the promise, she has not alleged that Defendants assumed the contractual obligation. Accordingly, Defendants are not bound by Guttmiller's promise even if it were communicated to them and was in some way enforceable against Guttmiller.

Plaintiff also maintains that Defendants breached its contract to never lower Plaintiff's wages, as allegedly promised to all employees when Defendants took over the company. Plaintiff claims that the employees at Buy and Sell were told that their jobs were secure, and that they were "given every indication that positions would remain constant." Declaration of Plaintiff ("Plaintiff's Decl.") at ¶ 3, attached to Plaintiff's Concise Counter–Statement of Facts In Opposition to Defendants' Motion for Partial Dismissal or Summary Judgment ("Plaintiff's Statement of Facts").

Even assuming that Defendants did in fact make such an announcement, the promise is unenforceable. The promise does not contain definite terms and there was no consideration given for the alleged contract. *See Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.,* 100 Hawai'i 149, 58 P.3d 1196, 1223 (citing *Wilder v. Mfg. Co.,* 178 Ill.App.3d 819, 128 Ill.Dec. 41, 533 N.E.2d 1129 (1989)(holding that state-

---

2. In her Complaint, Plaintiff fails to distinguish between the Defendants with respect to her many claims. The court will interpret Plaintiff's various claims, to the extent logical, as brought against all three Defendants.

ments made by a manager that employee had a permanent job did not state clear and definite terms)). The court declines to enforce the statement allegedly made by Defendants at a time immediately after a merger, promising an indefinite freeze in wage changes, especially given that there is no writing, or consideration given for such a promise. The court thereby GRANTS Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims for Breach of Contract.

 Plaintiff next argues that Defendants should be estopped from reneging on both promises under the doctrine of promissory estoppel. Generally, a claim for promissory estoppel arises in "certain situations where a promise has been made, even though without consideration, if it was intended that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice." *In re Herrick*, 82 Hawai'i 329, 337, 922 P.2d 942 (1996). In Hawaii, in order to make a claim for promissory estoppel, Plaintiff must establish the following four elements:

(1) There must be a promise;

(2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability);

(3) The promisee does in fact rely upon the promisor's promise; and

(4) Enforcement of the promise is necessary to avoid injustice.

*Id.* at 337–8, 922 P.2d 942.

 With respect to Guttmiller's alleged promise to Plaintiff regarding a sales manager position, Defendants did not make the promise and are thereby not bound by the doctrine of promissory estoppel. Plaintiff also contends, however, that Defendants should be estopped from lowering her salary from the level it was when the merger occurred. Plaintiff, however, has not provided the court with any evidence that even if Defendants made such a statement, that they intended Plaintiff to rely on it such that she might expect that her salary would remain constant during the entire course of her employment. Further, Plaintiff has not even alleged that she acted in reliance on the promise. While Plaintiff states that she had payments to make including tuition for her daughter, she does not argue that she passed on a job opportunity or made some type of life change or purchase in reliance on Defendants' alleged promise of a constant salary for life. Accordingly, the court GRANTS Defendants' Motion for Partial Summary Judgment of Plaintiff's Claims against all Defendants for Promissory Estoppel.

**B.** *Count II: 42 U.S.C. § 1981*

Plaintiff brings a claim under Section 1981 for hostile work environment, as well as discrimination for failure to promote. 42 U.S.C. § 1981 ("Section 1981") provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981(a) (1994). Section 1981 prohibits racial discrimination "in the making and enforcement of private contracts." *Runyon*, 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415; *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295.

 First, to the extent that Plaintiff is asserting claims against Defendants for discrimination on the basis of gender or age, the court GRANTS Defendants' Motion on those claims because Section 1981

only covers instances of race discrimination. Second, Defendants argue that Section 1981 is inapplicable to the instant case because Plaintiff has no contract for employment with Defendants. Plaintiff has not stated whether she had a contract with Buy and Sell, or whether her employment was at will. Without such information, Plaintiff certainly has not established that she had a prior contract with Defendants.

■ Plaintiff, however, appears to be alleging that as a consequence of Defendants' discrimination, they prevented her from forming a new contract with Defendants, one that would ordinarily accompany a promotion or new position assignment. To the extent that Plaintiff is claiming she was not permitted to enter into a new contract for employment with Defendants, she can assert claims under Section 1981. Accordingly, the court will next address whether Plaintiff has presented evidence to support a prima facie claim of hostile work environment or discrimination under Section 1981.

■ Plaintiff has not alleged sufficient facts to support a prima facie case of a claim for hostile work environment. In order to establish a prima facie case, Plaintiff must show that "(1) she was subjected to verbal or physical conduct because of her race, (2) the conduct was unwelcome and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Manatt v. Bank of America, NA,* 339 F.3d 792, 798 (9th Cir.2003)(internal citations omitted).

■ Plaintiff has not alleged that she was subject to verbal or physical conduct on account of her race. Instead, Plaintiff is arguing that her failure to be promoted or even be considered for a promotion, as well as her demotion, are sufficient evidence for this court to infer that Defendants were treating her poorly on account her race. Without any allegations of phys-

ical or verbal conduct, Plaintiff has not set forth a prima facie case for hostile work environment. The court therefore GRANTS Defendants' Motion for Partial Summary Judgment of Plaintiff's Claims for Hostile Work Environment under Section 1981.

■ Plaintiff, however, has alleged sufficient facts to support a claim of discrimination under Section 1981. The scheme of proof established in the analogous area of civil rights law applies to actions brought under Section 1981. *Patterson,* 491 U.S. at 186, 109 S.Ct. 2363. Namely, the plaintiff has the burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. In order to show a prima facie case, the plaintiff must establish that: (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified for continued employment; (3) she suffered an adverse employment decision; and (4) nonminority employees with comparable qualifications and work records did not suffer similar adverse employment decisions. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668. Plaintiff must establish that race, more likely than not, was a factor Defendants' failure to promote her. *See DeHorney v. Bank of Nat. Trust and Savings,* 879 F.2d 459, 468 (9th Cir.1989).

If the plaintiff can establish its prima facie case, an inference of discrimination arises. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendant can rebut the inference of discrimination by presenting evidence that the plaintiff suffered a negative employment action for a legitimate nondiscriminatory reason. *Patterson,* 491 U.S. at 188, 109 S.Ct. 2363. Plaintiff is then given the opportunity to establish that defendant's proffered reasons are pre-textual. *Id.*

■ Plaintiff is a member of a protected class. Plaintiff has alleged that she had been given a large amount of responsibility when she worked under Guttmiller, including having the authority to hire and fire other employees. Moreover, Plaintiff alleges that she directed more employees than any other salesperson, and brought in more sales. It is uncontested that Plaintiff suffered an adverse employment decision when her salary was cut from $3,000 to $800. Plaintiff has also stated that she was not considered for various sales manager positions. Finally, Plaintiff has stated that Defendant Grimes hired his wife, who is white, as a sales manager, instead of Plaintiff, when Plaintiff had more experience at the company. Plaintiff alleges that Defendants also hired a white man for a sales manager's position, who had less experience then Plaintiff. Accordingly, Plaintiff has alleged facts sufficient for this court to consider her claim of discrimination under Section 1981. The court DENIES Defendants' Motion to Dismiss Plaintiff's Claims pursuant to Section 1981.

### C. *Count III: 42 U.S.C. § 1982*

■ 42 U.S.C. § 1982 ("Section 1982") provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. In order to state a claim under Section 1982, Plaintiff must demonstrate that (1) he is a member of a racial minority; (2) he ap-

plied for and was qualified to rent or purchase certain property or housing; (3) he was rejected; and (4) the housing or rental opportunity remained available thereafter. *Phiffer v. Proud Parrot Motor Hotel, Inc.,* 648 F.2d 548, 551 (9th Cir.1980).

The court GRANTS Defendants' Motion for Partial Summary Judgment on Plaintiff's 42 U.S.C. § 1982 claim because Plaintiff cannot demonstrate that she applied for and was qualified to rent or purchase property or housing. Section 1982 is entirely irrelevant to the facts of the instant case.

### D. *Count IV: 42 U.S.C. § 1985*

■ To state a cause of action under 42 U.S.C. § 1985(3), Plaintiff must show that (1) " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action' " and (2) that the conspiracy " 'aimed at interfering with rights' that are 'protected against private, as well as official encroachment.' " *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267–68, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993)(further citations omitted).

■ To the extent the court understands Plaintiff's complaint, she appears to be alleging that Defendants conspired to demote her and deprive her of deserved promotions.[3] Plaintiff, however, is suing an employee, a company, and the alleged parent company of the same legal entity. Since a company cannot conspire with it-

---

**3.** The court notes that Plaintiff's submissions and Complaint are wrought with typographical errors and flagrant misstatements. With respect to Plaintiff's 42 U.S.C. § 1985 claim, Plaintiff's counsel stated in both the Complaint and the Amended Complaint, that she was discriminated against despite her "many yeas [sic] of experience in the union and the sewer maintenance field....," even though Plaintiff has never been employed in sewer maintenance. The court found it difficult to deduce precisely what claim Plaintiff was asserting, and struggled throughout its reading of Plaintiff's filings to understand exactly what legal arguments were being made by Plaintiff's counsel. The court strongly admonishes counsel's flagrant lack of attention to detail in its court filings and finds that this lack of diligence falls below the standard of professional competence required to practice before the federal court.

self, Plaintiff's claim against Defendant Gannett fails. Moreover, employees of a company are not liable for conspiracy so long as the employee is acting within the scope of his employment. *Johnson v. Hills & Dales General Hospital, et al.*, 40 F.3d 837, 838 (6th Cir.1994); *See Kacludis v. GTE Sprint Communications Corp.*, 806 F.Supp. 866, 873 (N.D.Cal.1992)(stating that agents of the employer who are vested with the power to act for the employer stand in the place of employer). The court finds that to the extent Plaintiff was denied promotion, Defendant Grimes was acting within the scope of his employment because promotions were necessarily a part of his job as General Manager of Pacific Media Publications. Moreover, Defendant Grimes is the only employee named in the complaint. It is unclear to the court, who, if anyone, Defendant Grimes would have conspired with. The court therefore GRANTS Defendants' Motion for Partial Summary Judgment of Plaintiff's Claims under Section 1985(3).

### E. *Count V: 42 U.S.C. § 1986*

In her fifth cause of action, Plaintiff alleges that Defendants violated 42 U.S.C. § 1986, which states:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented .... But no action under the provisions of this section shall be sustained which

is not commenced within one year after the cause of action accrued.

42 U.S.C. § 1986.

As stated above, Plaintiff has failed to allege facts sufficient to support a claim under 42 U.S.C. § 1985. Accordingly, Plaintiff's claim under 42 U.S.C. § 1986 is barred. The court GRANTS Defendants' Motion for Partial Summary Judgment or Summary Judgment on Plaintiff's Claims against all Defendants for violations of 42 U.S.C. § 1986.

### F. *Count VI and IX: Sex Discrimination and Retaliation under Hawaii Revised Statutes Chapter 378 and Title VII, as to any events which occurred more than 300 days before the filing of Plaintiff's July 14, 2003 Charge of Discrimination*

Under Title VII, a plaintiff must file a complaint alleging discrimination with the EEOC within 300 days from the date of the alleged incident. 42 U.S.C. § 2000e–5(e)(1). A timely filing is not, however, a jurisdictional prerequisite to suit in federal court. Rather, it is a requirement that, like a statute of limitations, is subject to the equitable doctrines of waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Hawaii Revised Statutes ("H.R.S."), Chapter 378 provides a statute of limitations of 180 days.

Defendants argue that Plaintiff's sex discrimination claim is untimely because her October 2002 filings with the HCRC and EEOC did not allege discrimination on the basis of sex, and she did not file a charge of discrimination alleging sex discrimination and retaliation until July 14, 2003. Plaintiff argues that she experienced sex discrimination when her salary was reduced in January of 2002. She states that the sex discrimination is a part

of a "continuing violation" pursuant to *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In *Morgan,* the Court stated that a Plaintiff has a viable claim if she can show a "series of acts, one or more of which are within the limitations period" however "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." 536 U.S. at 113, 122 S.Ct. 2061

■ At this stage in the litigation, the court declines to dismiss Plaintiff's claims where, if sufficient evidence is presented, it is very likely possible that Plaintiff suffered a series of acts that constituted discrimination, including some that fell within the allotted statute of limitations. Although Plaintiff mentioned her January 2002 demotion in her Complaint, Plaintiff also stated that in June of 2003 she was denied a Sales Manager Promotion. The court finds that there are genuine issues of fact that, if fully developed, may establish that Plaintiff was prejudiced as a consequence of Defendants' continued discrimination against her. The court thereby DENIES Defendants' Motion for Partial Summary Judgment on Counts VI and IX of Plaintiff's Complaint.

### G. Claims Against Defendant Pacific Media for Discrimination based on National Origin and Color Discrimination under Hawaii Revised Statutes Chapter 378

In her Sixth Claim for Relief, Plaintiff alleges that Defendants violated Hawaii Revised Statute ("H.R.S."), Chapter 378, which states in pertinent part:

It shall be an unlawful discriminatory practice:

 (1) Because of race, sex, sexual orientation, religion, color, ancestry . . .

 (A) For an employer to refuse to hire or employ or to bar or dis-

charge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment;"

H.R.S. Chapter 378.

Defendants argue that Plaintiff's claims of discrimination under both statutes for discrimination based on color or national origin should be dismissed for failure to exhaust administrative remedies. Plaintiff did not allege discrimination based on color or national origin in her complaints filed with the EEOC or the HCRC. *See* Ex. A and B to Defendants' Concise Statement of Facts.

The court agrees with Defendants that it must balance the interests of liberal pleading rules against the interests of Defendants and the court. Plaintiff's claim for discrimination on the basis of national origin is meritless and is not supported in any way by the facts alleged by Plaintiff. The court thereby GRANTS Defendants' Motion to Dismiss Plaintiff's claims for discrimination based on National Origin against all defendants pursuant to Hawaii Revised Statutes ("H.R.S.") Chapter 378 and 42 U.S.C. Section 2000e.

■ With respect to Plaintiff's claim for discrimination on the basis of color, the court will not deny Plaintiff an opportunity to gather evidence in support of such a claim based on a technical interpretation of procedural requirements. Plaintiff has alleged that she was discriminated on account of her race and color, and although she failed to check the appropriate box on her form, her race claim is inextricably wound with her other claims for discrimination. The court therefore DENIES Defendants' Motion for Partial Summary Judgment of Plaintiff's Claims for discrimination based on color made pursuant to Hawaii Revised Statutes ("H.R.S.") Chap-

ter 378 and 42 U.S.C. Section 2000e, as against Defendant Pacific Media.

H. *Claims Against Joe Grimes: under Hawaii Revised Statutes Chapter 378 and 42 U.S.C. Section 2000e*

 Plaintiff states in her opposition that "claims against [Defendant] Joe Grimes do not exist under Title VII." Plaintiff's Opposition at 23. Title VII prohibits discriminatory practices by an "employer." *See* 42 U.S.C. § 2000e–2. Individual employees, including supervisors or managers, are not personally liable as employers under Title VII. *See Pink v. Modoc Indian Health Project, Inc.,* 157 F.3d 1185, 1189 (9th Cir.1998). Accordingly, the court GRANTS Defendants' Motion for Partial Summary Judgment on Plaintiff's claims against Defendant Grimes made pursuant to Title VII.

Plaintiff, however, argues that the Hawaii Statute differs from Title VII because it has a specific provision holding employees who "abet, incite, compel, or coerce the doing of any discriminatory practices liable for their own actions." H.R.S. Chapter 378. Defendants argue that Chapter 378 permits individual liability in cases of aiding and abetting discrimination (HRS § 378–2(3)) but not for discriminating against an employee under the statute as a whole.

 Defendants cite several Hawaii district court cases that have seemingly differing interpretations as to whether employees are generally liable for discriminatory acts under HRS § 378, or whether they are only liable for aiding and abetting discrimination under HRS § 378–2(3). While the court notes the divide in opinion within the district court, it ultimately concurs with the court in *Luzon v. Atlas Ins. Agency, Inc.,* 284 F.Supp.2d 1261 (D.Hawai'i2003), that the legislature intended to include employees as personally liable pursuant to § 378–2(3), and not personally liable for a violation of the statute in general. Throughout Chapter 378, the legislature has described which behavior, when committed by an "employer," "employment agency," or "labor organization," constitutes an unlawful discriminatory practice. Only in Section 378–2(3) did the legislature include the broad reference to "any person whether an employer, employee, or not" as being liable for the specific action of aiding, abetting, inciting, compelling, or coercing discriminatory actions. H.R.S. Chapter 378. As the court stated in *Luzon,* the legislature "clearly knew how to include employees within a statute's scope" and its failure to do so explicitly throughout the statute suggests that employees are only held liable for infractions of § 378–2(3). 284 F.Supp.2d at 1265 n. 1.[4]

 In the instant case, Plaintiff's claim against Defendant Grimes under Section 378 is premised on the her claim that he aided and abetted the discrimination against her. Plaintiff's claim, however, is meritless because she has failed to

---

4. The court notes that the Hawaii Supreme Court has never been directly presented with the issue of individual employee liability under HRS § 378–2. The case most on point, *Schefke v. Reliable Collection Agency,* 96 Hawai'i 408, 32 P.3d 52 (2001), involved a plaintiff who sued Jonathan Kirschner, an officer and 20 percent owner of the company for which the plaintiff worked, and Fred Kirschner, his father who owned 80 percent of the company. On appeal, Fred Kirschner argued that he should not be held liable for a decision that adversely affected the plaintiff because he was not involved in making the decision. The court ultimately held that Fred Kirschner was liable for inciting, pursuant to HRS § 378–2(3), a discriminatory practice, forbidden by HRS § 378–2(2). The court did not discuss under what theory it held Jonathan Kirschner liable. Accordingly, the Hawaii Supreme Court did not actually decide whether an individual could be held liable under any other subsection of HRS § 378–2 other than HRS § 378–2(3).

identify any discriminatory practice that Defendant Grimes aided and abetted. Defendant Grimes cannot "be liable for aiding and abetting himself." *Mukaida v. State of Hawaii, et al.,* 159 F.Supp.2d 1211 (D.Haw.2001), *aff'd,* 85 Fed.Appx. 631, 2004 WL 68691 (9th Cir.2004). The court thereby GRANTS Defendants' Motion for Partial Summary Judgment on Plaintiff's claims against Defendant Grimes for discrimination under 42 U.S.C. § 2000(e) and H.R.S. Chapter 378,

### I. *Claims Against Defendant Gannett under Hawaii Revised Statutes Chapter 378 and 42 U.S.C. Section 2000e*

Plaintiff sues Defendant Gannett stating that it "created and controls" Defendant Pacific Media. Complaint at ¶ 3. Defendant argues that under the alter ego doctrine, Defendant Gannet should not have to defend this lawsuit solely because it "created and controls" Defendant Pacific Media. Defendant states that under Title VII case law, two or more separate business entities cannot be regarded as a single employer unless they are "so structurally integrated that they comprise one integrated enterprise." Defendants' Motion at 22.

■ The court need not reach a discussion premised on the alter ego doctrine because Plaintiff has not exhausted her administrative remedies. Defendant Gannett was not named in Plaintiff's charges of discrimination filed against Defendant Pacific Media with either the EEOC or the HCRC. Accordingly, the court GRANTS Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims against Defendant Gannett under Hawaii Revised Statutes Chapter 378 and 42 U.S.C. Section 2000e for failure to exhaust her administrative remedies.

### J. *Termination in Violation of Public Policy*

Plaintiff makes her claim of a violation of public policy based on the holding in *Parnar v. Americana Hotels, Inc.,* 65 Haw. 370, 652 P.2d 625 (1982). The court in *Parnar* held that "an employer may be held liable in tort where his discharge of an employee violates a clear mandate of public policy." *Id.* at 380, 652 P.2d 625. The court, however, recognizing the amorphous nature of the term "public policy," and expressed concern that courts not "unjustifiably intrude" on employment arrangements. *Id.* at 379, 652 P.2d 625. The court stated that in determining whether a clear mandate of public policy has been violated, "courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme." *Id.* at 380, 652 P.2d 625. However, the court later stated that a claim for violation of public policy should be dismissed where "the public policy upon which the claim is based is embodied in a statute ... that itself provides a sufficient remedy for its violation." *Ross v. Stouffer Hotel Company (Hawai'i) Ltd.,* 76 Hawai'i 454, 464, 879 P.2d 1037 (1994).

■ As stated above, Plaintiff has asserted viable claims against Defendants under 42 U.S.C. § 1981, Title VII, and HRS Chapter 378. Each of these statutes provides a sufficient remedy such that the court need not fashion any further remedy under the public policy exception. Accordingly, the court GRANTS Defendants' Motion for Partial Summary Judgment or Plaintiff's Claim for Violation of Public Policy.

### K. *Fourteenth Amendment to the United States Constitution*

■ The Fourteenth Amendment of the Constitution provides in pertinent part that "[n]o State shall ... deprive any per-

son of life, liberty, or property without due process of law." The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Defendants are all purely private actors. Plaintiff has not argued that any of the parties named in the instant suit are state actors. The court thereby DISMISSES Plaintiff's claims made pursuant to the Fourteenth Amendment.

### CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendant's Motion for Partial Dismissal Or Alternatively, For Partial Summary Judgment.

IT IS SO ORDERED.